UNITED STATES of America,
Plaintiff-Appellee,

v.

Freddie G. LOCHAMY and Anthony J. Salinas, Defendants-Appellants.

No. 82–1671.

United States Court of Appeals,
Fifth Circuit.

Feb. 9, 1984.

Brice A. Tondre, Houston, Tex., for defendants-appellants.

Glenn L. Archer, Jr., Asst. Atty. Gen., Michael L. Paup, Chief Appellate Section, Gilbert S. Rothenberg, Melvin E. Clark, Jr., Attys., Tax Div., U.S. Dept. of Justice, Washington, D.C., for plaintiff-appellee.

Before GEE, TATE and HIGGINBOTHAM, Circuit Judges.

TATE, Circuit Judge:

Freddie Lochamy and Anthony Salinas appeal from the district court's judgment finding them jointly and severally liable for a $37,621.00 deficiency in the payment of wagering taxes. *See* 26 U.S.C. § 4401. On appeal, Lochamy and Salinas essentially claim that the record does not support the district court's findings that (1) they were in the business of accepting wagers as bookmakers, (2) that they jointly held a proprietary interest in the wagers allegedly accepted by them, and (3) that they were engaged in such bookmaking operations between April 5 and May 4, 1973, the projection period used by the Internal Revenue Service to estimate the wagering tax deficiency. Because we find that these determina-

tions by the district court are properly supported by the record and that the appellants' other claims are without merit, we affirm.

On May 4, 1973, officers from the Bexar County, Texas Sheriff's office raided an apartment in search of illegal gambling activities. The officers arrested Lochamy and Salinas, who were found inside the apartment, and seized betting slips, tally sheets, and other articles of gambling paraphernalia. While present in the apartment, the officers received several telephone calls from callers attempting to place bets. Lochamy and Salinas were tried in state court on charges of illegal bookmaking, but the state court directed an acquittal on the ground that the indictments were fatally defective under Texas law.

The state authorities provided the Internal Revenue Service with the documents and papers seized in the raid. Using these documents as a basis for estimating the gambling activities of Lochamy and Salinas, the Internal Revenue Service projected a wagering tax deficiency of $58,468.00, exclusive of interest, for the period between April 5 and May 4, 1973.[1] Of the amount assessed, Lochamy and Salinas respectively paid $24.20 and $36.00 in taxes on wagers they had allegedly accepted and brought separate refund actions against the United States to recover those amounts. The United States counterclaimed against both parties for the unpaid balance of the assessment. The district court then realigned the parties, making the United States the plaintiff and Lochamy and Salinas the defendants in the present action.

The district court tried the case without a jury and found that both defendants had been engaged in the business of accepting wagers as bookmakers on sporting events. The court further found that each of the defendants had a proprietary interest in the wagering activities that, according to the Internal Revenue Service projection, extended from April 5 to May 4, 1973. The court, however, recalculated the amount of the wagering tax deficiency on a "wagers accepted per game" rather than a "wagers accepted per day" basis and accordingly reduced the assessment to $37,621.00 exclusive of any interest or penalty. Lochamy and Salinas now appeal the judgment of the district court.

## I. The Wagering Tax Assessment

Lochamy and Salinas raise several contentions challenging the validity of the deficiency in wagering taxes assessed against them by the district court. Particularly, the defendants claim that the district court erred in finding that (1) they were engaged in the business of accepting wagers as bookmakers, (2) that they jointly held a proprietary interest in the wagers so accepted, and (3) that the period between April 5 and May 4, 1973 was properly used to project an estimate of the defendants' wagering activities. For the reasons stated below, we reject these contentions.

*The defendants' joint proprietary interest in the business of accepting wagers*

Lochamy and Salinas both testified that they were engaged in the business of placing wagers as bettors, not accepting wagers as bookmakers, and therefore should be excluded from the statutory language imposing a 10% tax on persons accepting wagers.[2] 26 U.S.C. § 4401. An officer who participated in the raid on the apartment where the defendants were arrested testified that when he answered the apartment telephone, he spoke with several persons requesting "line information" on various games in order to place bets. Arthur Eberhard, a government expert on the gambling business, testified that the documents, tally sheets and other paraphernalia seized in the apartment were consistent with the kinds of records kept by a bookmaking operation. Their testimony to the

---

1. The United States made a further assessment against Lochamy and Salinas on November 15, 1974, for a $12.50 deficiency in payment of an occupational tax.

2. A 1974 amendment to 26 U.S.C. § 4401 changed the wagering tax from 10% to 2% of the wagers accepted. Since the events at issue here occurred in 1973, the 10% rate has been applied to the defendants' wagering activities.

effect that the defendants were in the business of accepting wagers during the period at issue is corroborated by the testimony of three witnesses that during 1972–75 Salinas had been in the business of accepting wagers from them, although admittedly the witnesses' testimony at the 1982 trial is somewhat indefinite as to whether particular bets by them occurred within the assessment period of April 5 to May 4, 1973. In light of these facts, we cannot find that the district court's conclusion that the defendants were engaged in the business of accepting rather than placing wagers was clearly erroneous.

■ Similarly, the record amply supports the district court's finding that both Lochamy and Salinas had a proprietary interest in the wagering activities. Although Lochamy testified that he was not in Texas during part of the period for which the wagering tax was assessed, he further testified that he and Salinas shared the profits of "what we bet" (R. IV, Tr. 77) according to the amount each had contributed to finance the bets. Moreover, Salinas identified both his and Lochamy's handwriting on the documents and tally sheets seized by the police in the raid. Lochamy admitted that he and Salinas worked together to handicap the baseball games involved in their wagering activities. The district court, therefore, had a sufficient evidentiary basis from which it could conclude that Lochamy and Salinas each shared a proprietary interest in their wagering activities and that they should be jointly liable for any wagering tax deficiency.

The district court's findings that Lochamy and Salinas were engaged in the business of accepting, not placing, wagers and that they shared a proprietary interest in the profits of those activities are thus not clearly erroneous. Having established the statutory prerequisites to the joint assessment of a wagering tax against the defendants, the government then introduced evidence to support its projection of the wagering taxes for which Lochamy and Salinas should be liable for the April 5 to May 4, 1973 period.

*Period of the defendants' wagering activities*

Using the seized betting slips as a basis for its calculations, the Internal Revenue Service estimated the total wagers accepted per day for both baseball and basketball contests. The daily wager total for baseball was then multiplied by the number of days (26) on which baseball games were played from April 5, 1973 (the start of the baseball season) to May 4, 1973 (the day of the defendants' arrest). The daily wager total for basketball was also multiplied by the number of days (4) on which professional basketball games were played during the projection period. Using this method, the government assessed a wagering tax deficiency of $58,468.00 against the defendants, exclusive of penalties and interest. Although the district court agreed that the estimation of the defendants' wagering activities should be related to the sporting events which took place during the projection period, it recalculated the wagering tax deficiency by averaging the aggregate bets accepted by the defendants on a baseball or basketball game and then multiplying that figure by the number of baseball or basketball games played between April 5 and May 4, 1973. Since this latter method resulted in an estimation of $37,-621.00 in unpaid wagering taxes, the district court reduced the assessment accordingly.[3]

■ In the present case, Lochamy and Salinas maintained no records of their daily wagering activities for the period at issue. *See* 26 U.S.C. § 4403 (requiring persons who accept wagers to keep a daily record of their wagering activities.) In the absence of taxpayer records, the Commissioner of Internal Revenue is entitled to estimate the wagering activities of the taxpayer "by any reasonable method" in order to assess his wagering tax liability. *Suarez v. United States,* 582 F.2d 1007, 1010 (5th Cir.1978). The Commissioner's assessment is accorded a presumption of correctness, thus placing

---

3. The government does not appeal the district court's assessment.

the burden on the taxpayer "to prove by a preponderance of the evidence that the Commissioner's determination was erroneous." *Carson v. United States,* 560 F.2d 693, 696 (5th Cir.1977).[4] In the present case, we agree with the judgment of the district court that the taxpayer did not meet his burden of showing the assessment to be erroneous.[5]

Lochamy and Salinas argue that the wagering tax assessment entered against them was erroneous because the record includes no evidence to support the use of the period between April 5 and May 4, 1973 as the basis for the government's projection of their wagering tax deficiency, as modified by the district court. The defendants assert that the projection period should have included only May 3rd and May 4th of 1973, since those were the only two days for which the government had tangible evidence (in the form of betting slips) of their wagering activities. This argument has been previously rejected by this court in *Carson v. United States,* 560 F.2d 693 (5th Cir.1977).

■ In *Carson,* we noted that a wagering tax assessment could not stand "if the record contains no item of proof tending to show that the taxpayer was engaged in wagering activity during the period assessed." *Carson, supra,* 560 F.2d at 698. Accordingly, a wagering tax assessment that is "totally without factual foundation"

cannot rest on the presumption of correctness. *Id.* By comparison, however, an assessment supported by evidence in the record will be accorded the presumption of correctness, since

> [t]he clandestine nature of gambling operations in most states and the frequent failure of bookmakers to keep records require applying the presumption of correctness to the Commissioner's reconstruction of the tax base by any reasonable method where adequate records have not been kept.

*Carson, supra,* 560 F.2d at 696.

■ In the present case, the assessment against Lochamy and Salinas was based on the average aggregate wagers accepted by Lochamy and Salinas on baseball and basketball contests. These averages were based upon the betting slips and tally sheets seized by police officers in the May 4th raid of the apartment where the defendants were arrested.

The April 5th to May 4th period was used in the government's projections, and in the revised projection made by the district court, based upon evidence that Lochamy and Salinas admittedly engaged in wagering activities on baseball games and that the 1973 baseball season started on April 5th. (R. IV, Tr. 12, 76, 111). *See Carson, supra,* 560 F.2d at 698 (relying upon the starting date of the exhibition football sea-

4. Since we find that the taxpayers did not meet their burden of showing the assessment to be erroneous, we need not address the issue of whether the taxpayers would have faced the further burden of proving the correct amount of the taxes owing. *See Carson v. United States,* 560 F.2d 693, 696 (5th Cir.1977) (noting that a taxpayer in a refund action *may* bear the dual burden of showing that the assessment was erroneous and the correct amount of the taxes owing, and therefore the amount of the refund to which he claims he is entitled).

5. Lochamy and Salinas assert that the district court improperly and prejudicially altered the government's burden of proof by stating before the trial that the government must prove the validity of the assessment by a "preponderance of the evidence", while stating in its findings that the assessment would be valid if there was "some basis" in the record to support it. This

contention is meritless. Once the government has shown, as it did here, by a preponderance of the evidence that the defendants were engaged in the business of accepting wagers for the purposes of 26 U.S.C. § 4401, then—in the absence of daily records kept by the taxpayers—the government is entitled to estimate the wagering activities of the defendants and project their wagering tax liability by any reasonable method. This second step of estimating the taxpayers' wagering tax liability is accorded the presumption of correctness provided that it is supported by some evidence in the record and is not "totally without factual foundation." *Carson v. United States,* 560 F.2d 693, 698 (5th Cir.1977). It is then the taxpayer's burden to show by a preponderance of the evidence that the projection is erroneous. *Carson, supra,* 560 F.2d at 696. We find, therefore, that the district court properly applied these separate burdens in the present case.

son to project wagering activities of taxpayers for a period beginning on that date). Accordingly, we are unable to agree that the projection period used by the Commissioner in the present case was unreasonable in light of the facts presented here, and thus find that the taxpayers failed to establish that the wagering tax assessment entered against them was erroneous.

## II. *The Taxpayers' Other Claims*

Lochamy and Salinas also raise other contentions by their appeal. These include complaints as to (1) the denial of their request for a jury trial and (2) an alleged fifth amendment violation. We find no merit to these contentions.

### Denial of jury trial

Lochamy and Salinas assert that the district court abused its discretion by denying their motion for a jury trial pursuant to Fed.R.Civ.P. 39(b). Rule 39(b) permits a district court the discretion to order a trial by jury on the motion of a party, even though a jury trial was not timely demanded by a party under the provisions of Fed.R. Civ.P. 38(b).

The record indicates that the issues in the present case were finally joined by the parties on March 14, 1977, when Lochamy and Salinas filed answers to the government's counterclaims. Lochamy and Salinas did not request a jury trial until December 20, 1978, some twenty-one months after the final joinder of the issues in the case. The record indicates that the defendants' motion for a jury trial did not advance any explanation for the significant delay in making the request for a jury trial.

While delay alone does not necessarily support the district court's exercise of discretion against a party's jury trial request, it is considered strongly against the motion when no justification is offered in explanation of a lengthy delay. *Rhodes v. Amarillo Hospital District,* 654 F.2d 1148, 1154 (5th Cir.1981). In light of the present circumstances, we cannot find that the district court abused its discretion by denying the defendants' Rule 39(b) motion for a jury trial.

### Fifth amendment claims

Lochamy and Salinas also contend that the wagering tax assessment estimated by the Internal Revenue Service, and the presumption of correctness accorded it, amounts to a penalty for the failure of the taxpayers to keep records of their wagering activities. The taxpayers argue that a recordkeeping statute such as 26 U.S.C. § 4403, which requires them to keep daily records of the wagers they accept, is tantamount to a requirement that they keep evidence of their illegal conduct in violation of their fifth amendment rights. *See Grosso v. United States,* 390 U.S. 62, 88 S.Ct. 709, 19 L.Ed.2d 906 (1968) and *Marchetti v. United States,* 390 U.S. 39, 88 S.Ct. 697, 19 L.Ed.2d 889 (1968).

As an initial matter, we do not agree that an estimation of the taxpayers' wagering tax liability constitutes a "penalty" for fifth amendment purposes when the estimation is adequately supported by evidence in the record. Moreover, the government seeks only civil liabilities against Lochamy and Salinas for their wagering activities. As we noted in *Urban v. United States,* 445 F.2d 641, 643 (5th Cir.1971), *cert. denied,* 404 U.S. 1015, 92 S.Ct. 675, 30 L.Ed.2d 663 (1972), the *Marchetti* and *Grosso* cases (relied upon by the defendants) found that a proper claim of the privilege against self-incrimination precluded only a criminal conviction for failure to pay the wagering tax under 26 U.S.C. § 4401. Where, as here, the party faces no criminal liability for his conduct,[6] we need not inquire further into whether the recordkeeping requirements of 26 U.S.C. § 4403 may impermissibly require the taxpayers to incriminate themselves.[7]

**6.** In that Lochamy and Salinas have been once placed in jeopardy in a state prosecution for bookmaking that resulted in their acquittal, it appears that a further state criminal prosecution of the defendants for their conduct would be barred by double jeopardy.

**7.** The defendants also claim that the district court erred in refusing to grant them attorney's

### III. Conclusion

In that we find no merit to the defendants' contentions on appeal, we AFFIRM the judgment of the district court.

AFFIRMED.

fees since the court modified the Commissioner's wagering tax assessment. Attorney's fees are only proper when a party has prevailed in the case. 28 U.S.C. § 2412(d)(1)(A). Since Lochamy and Salinas did not prevail on the primary issue litigated below—i.e., their liability for unpaid wagering taxes—the district court properly refused to grant attorney's fees.