IRVING L. COOPER AND SANDRA K. COOPER, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Cooper v. Commissioner
Docket No. 24114-84
United States Tax Court
T.C. Memo 1991-138; 1991 Tax Ct. Memo LEXIS 157; 61 T.C.M. (CCH) 2250; T.C.M. (RIA) 91138; March 27, 1991, Filed *157 Decision will be entered under Rule 155. Robert Lynn Henderson, Jr., for the petitioners. Kathleen O. Lier, for the respondent. RUWE, Judge. RUWE
MEMORANDUM FINDINGS OF FACT AND OPINION Respondent determined deficiencies and additions to tax in petitioners' Federal income taxes as follows: Addition to Tax
Taxable Year Ended
Deficiency
Sec. 6653(a) [1]
December 31, 1980
$ 22,359.68
$ 1,117.98
Additions to Tax
Taxable Year Ended
Deficiency
Sec. 6653(a)(1)
Sec. 6653(a)(2)
December 31, 1981
$ 2,926.24
$ 146.32
50 percent of
the interest due
on $ 2,926.24
After concessions by respondent, [2] the issues for decision are: (1) Whether petitioners received unreported income for the taxable years 1980 and 1981, in the amounts of $ 40,138.49 and $ 5,393.32, *158 respectively; and (2) whether petitioners are liable for additions to tax for negligence or intentional disregard of rules or regulations pursuant to section 6653(a) for the taxable year 1980 and section 6653(a)(1) and (2) for the taxable year 1981. FINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulation of facts and attached exhibits are incorporated herein by this reference. Petitioners resided in Slidell, Louisiana, at the time they filed their petition in this case. Petitioners timely filed their joint Federal income tax returns for the years in issue. Any reference to petitioner shall refer to Sandra K. Cooper. Petitioner was employed as a receptionist by John P. Epling, Jr., M.D. *159 (Dr. Epling), through one of his medical corporations, from 1978 through her termination on January 26, 1981. During 1980 and 1981, petitioner's duties as a receptionist included: picking up the mail delivered to the office's post office box, preparing and filing insurance forms, recording patient payments into the office's record system, and depositing checks issued by patients or their insurers to Dr. Epling and/or his business into Dr. Epling's bank account. Checks constituting payment for medical services were typically mailed by patients or their insurance companies to Dr. Epling's office or post office box. It was the policy of the office to stamp the back of each of the checks received "For Deposit Only" with Dr. Epling's name, address, and bank account number. During the latter half of 1980, Dr. Epling began to suspect that someone was taking funds from his business without authorization. In October 1980, Dr. Epling hired Robert E. Ryals (Mr. Ryals), an accountant, to investigate this matter. Dr. Epling did not initially tell Mr. Ryals that he suspected that someone was taking money from his business. Within one or two weeks of beginning his investigation, Mr. Ryals *160 ascertained that someone was taking funds from Dr. Epling's business without authorization. Mr. Ryals also determined that the books and records were in a general state of disarray. For example, bank deposit information rarely matched other books and records. During the course of his investigation, Mr. Ryals attempted to identify the person who was taking money from Dr. Epling's business. He also attempted to determine the correct figures for Dr. Epling's books and records, and establish a better recordkeeping system. Mr. Ryals instituted several new policies and procedures in order to achieve these objectives. Some of the new policies sought to limit the opportunities to embezzle money from Dr. Epling. For instance, office employees were instructed not to take work home with them and not to work after regular office hours or on weekends without prior approval from Mr. Ryals or Dr. Epling's nurse. Despite this policy, petitioner worked after regular hours and took work home with her. Other procedures were instituted in an effort to organize and update Dr. Epling's books and records. In December 1980, Mr. Ryals prepared statements to be sent to patients who, according to *161 Dr. Epling's records, had not paid their accounts. Mr. Ryals anticipated that those patients who had sent their payments to Dr. Epling would contact his office and inform the office staff of their payment. This information would indicate whether someone had taken the payment. Petitioner was responsible for mailing these statements. None of the patients to whom these statements pertained responded. Petitioner's residence was searched by the Slidell police on February 19, 1981. The police found a file box with 116 envelopes containing statements from Dr. Epling during this search. Another procedure instituted by Mr. Ryals was to establish accounts receivable control numbers in order to track the flow of payments through the office. Implementing this procedure required Mr. Ryals to review the information recorded on individual patient cards. Once the information was reviewed, Mr. Ryals marked the card to indicate that he had reviewed it. During the course of implementing this procedure, Mr. Ryals went to the office one weekend and found petitioner marking cards that he had not yet reviewed. Mr. Ryals' investigation did not definitely identify who was taking money from Dr. Epling. *162 Accordingly, Dr. Epling decided to fire his employees one by one until the embezzling stopped. He fired petitioner first on January 26, 1981. Dr. Epling fired petitioner first because he believed that she was the least proficient at her job and because he suspected that she was embezzling funds from his business. Sometime after petitioner was fired, she accessed Dr. Epling's post office box and removed checks payable to Dr. Epling. On February 18, 1981, after her employment had been terminated, petitioner forged John P. Epling, Jr., M.D.'s signature and signed her name on the back of a check dated February 11, 1981. This check was made payable to Dr. John Epling as a medicare payment issued by Pan-American Life Insurance Company, in the amount of $ 1,497.16. Petitioner cashed the check at the First National Bank of Covington (presently Hibernia National Bank), and retained the entire $ 1,497.16 for her personal use. Tellers at the bank were accustomed to dealing with petitioner with respect to Dr. Epling's banking business and this is the reason that they cashed the check. Later that day, the teller who cashed the check was unable to balance her intake and outtake because *163 she had given too much cash to one of the customers whom she had served. The teller supervisor contacted Dr. Epling's office and asked if petitioner had returned with more money than she was suppose to receive. Dr. Epling's wife informed the teller supervisor that petitioner was no longer employed by Dr. Epling and that the bank should not have cashed the check. Dr. and Mrs. Epling contacted the Slidell Police Department regarding the check taken from Dr. Epling and cashed by petitioner. Sergeant Eugene Swan (Sergeant Swan), Chief of Detectives, and Detective Cathy Porter (Detective Porter) investigated the alleged theft. After the commencement of their investigation, Sergeant Swan and Detective Porter obtained a search warrant for petitioner's house. Sergeant Swan and Detective Porter executed the search warrant on February 19, 1981. During the course of the search, they located and seized numerous records and office files belonging to Dr. Epling, as well as 48 uncashed checks made payable to either Dr. Epling or his business. Twenty-six of the seized checks were dated in 1980 bearing a total face amount of $ 1,071.00. One of these seized checks was dated February 1980; *164 one was dated June 1980; one was dated July 1980; two were dated August 1980; nine were dated September 1980; four were dated October 1980; and six were dated December 1980. [3] Twenty-two of the seized checks were dated January or February 1981 and bore a total face amount of $ 962.20. Sixteen of these checks bore issue dates subsequent to the date petitioner was fired. Several of the uncashed checks seized from petitioner's residence were found in petitioner's purse. During the search of petitioner's house, Sergeant Swan and Detective Porter observed approximately 100 shopping bags which contained various clothing articles. Many of these bags still had the sales receipts in them. Forty to sixty of these bags were found in one particular bedroom. This bedroom also had a large closet which held, among other things, approximately 20 to 25 new dresses which still had the price tags attached indicating a cost between $ 90 and $ 200 per dress. *165 Several other closets in petitioner's residence contained numerous dresses of similar cost, with the price tags still on them. Petitioner's house also contained approximately 50 pairs of women's shoes, many of which appeared to have never been worn. Petitioner had numerous pieces of jewelry in her house which included rings and 14 karat gold chains. Following the execution of the search warrant, Sergeant Swan and Detective Porter conducted an investigation to ascertain the extent of the theft perpetrated against Dr. Epling. During this investigation, Sergeant Swan and Detective Porter identified checks payable to Dr. Epling which his office had not received. Sergeant Swan and Detective Porter contacted the makers of the checks to determine whether the checks were endorsed by petitioner or whether the checks contained the restrictive endorsement "For Deposit Only." Sergeant Swan and Detective Porter identified numerous checks which were not stamped with the restrictive "For Deposit Only" endorsement and were endorsed by petitioner. [4] Based on these checks, respondent determined that petitioner realized income for the taxable years 1980 and 1981 in the amounts of $ 44,197.80 *166 and $ 5,743.92, respectively. [5] Petitioner admits in her brief that she "cashed checks made payable to her employer in 1980 and 1981, in the amounts of $ 44,197.80 and $ 5,743.92, respectively." Petitioner admits that she kept the cash from two of these checks in the respective amounts of $ 1,497.16 and $ 326.00, but denies that she retained the proceeds from the remainder of the checks. *167 OPINION The first issue for decision is whether petitioner realized unreported income for the taxable years 1980 and 1981 in the amounts of $ 40,138.49 and $ 5,393.32, respectively. Under section 61, gross income includes "all income from whatever source derived." It is well established that embezzled or stolen funds are includable in income in the year in which they are misappropriated. Sec. 1.61-14(a), Income Tax Regs.; James v. Commissioner, 366 U.S. 213, 219-220, 6 L. Ed. 2d 246, 81 S. Ct. 1052 (1961); Lydon v. Commissioner, 351 F.2d 539 (7th Cir. 1965), affg. a Memorandum Opinion of this Court. Respondent's determination is presumed correct, and petitioner bears the burden of proving otherwise. Welch v. Helvering, 290 U.S. 111, 78 L. Ed. 212, 54 S. Ct. 8 (1933); Rule 142(a). Petitioner argues that respondent bears the burden of proving that his determination is correct. Petitioner argues that placing the burden on her puts her in the "almost impossible situation" of proving a negative, i.e., proving that she did not receive the income that respondent contends she did. Petitioner cites Carson v. United States, 560 F.2d 693 (5th Cir. 1977), for this *168 position. Petitioner misunderstands Carson v. United States, supra.Carson deals with a narrow exception to the general rule that respondent's determination is presumed correct. Under this exception, a "naked" assessment which is without any foundation is not entitled to the presumption of correctness. Carson v. United States, supra at 696. Carson held that, in the context of a tax determination based on alleged illegal activities, respondent must present some evidence to support an inference that petitioner was engaged in the illegal activity during the time period included in the assessment in order to show that the assessment is not "naked." Carson v. United States, supra at 696; see United States v. Lochamy, 724 F.2d 494 (5th Cir. 1984). In the instant case, respondent has presented sufficient evidence to demonstrate that petitioner was involved in embezzlement and theft activity during the years in issue. Thus, the assessment is not "naked," and the presumption of correctness attaches. Accordingly, petitioner bears the burden of proving that respondent's assessment is incorrect. *169 [6]
After review of the entire record, we find that petitioner fails to satisfy her burden of proof. Petitioner's principal argument is that she did not retain the proceeds of most of the checks which she admittedly cashed during 1980 *170 and 1981. She implied that the proceeds were turned over to others in Dr. Epling's office, particularly Mrs. Epling. Dr. and Mrs. Epling and other people associated with Dr. Epling's practice during the period in issue testified. They denied that they received the proceeds from the checks which petitioner cashed. Having heard and observed their testimony and considering the other evidence in the record, we accept their testimony as truthful. Petitioner admits that she improperly cashed and retained the proceeds from two checks payable to Dr. Epling in the amounts of $ 1,497.16 and $ 326.00. Petitioner admits improperly removing the check for $ 1,497.16 from Dr. Epling's post office box after she was fired. In order to cash this check, petitioner forged Dr. Epling's signature. The only check made out in the amount of $ 326, among those checks identified as checks which were taken from Dr. Epling, was dated September 23, 1980, and appears to have been cashed in October 1980. Petitioner claims that she purchased office supplies when Dr. Epling's credit was revoked and that the proceeds from the two checks which she admitted taking were used to reimburse herself for these expenses. *171 Petitioner has failed to establish that she expended money on behalf of her employer and that these two checks represent reimbursement. The evidence indicates that Dr. Epling's credit was never revoked. Also, when the police searched petitioner's house, they found sixteen uncashed checks payable to Dr. Epling which bore issue dates subsequent to the date petitioner was fired. This indicates, contrary to her explanation, that she stole many more checks than the two she claimed were taken as reimbursement. When petitioner was interviewed by one of respondent's agents, he presented her with a list of checks which she had endorsed. Petitioner admitted to the agent that she cashed these checks and also admitted that she kept the proceeds from approximately 30 percent of these checks. This admission is inconsistent with petitioner's claim that she kept the proceeds from only two checks. Three weeks after Dr. Epling terminated petitioner's employment, petitioner's house was searched by the police. The return on the search warrant for petitioner's house, which lists all items seized during the course of the search, consists of 24 pages. The return indicates that the police found *172 numerous records and office files belonging to Dr. Epling as well as 48 uncashed checks made payable to Dr. Epling or one of his corporations. The dates on these checks indicate that petitioner was consistently taking checks payable to Dr. Epling during the period February 1980 through February 1981. Several of the seized checks were found in petitioner's purse. Considering the evidence presented, we find that petitioner has failed to satisfy her burden of proof. [7] Accordingly, we hold that petitioner received unreported income for the taxable years 1980 and 1981, in the amounts of $ 40,138.49 and $ 5,393.32, respectively. *173 The second issue for decision is whether petitioner is liable for additions to tax under section 6653(a) for the taxable year 1980 and section 6653(a)(1) and (2) for the taxable year 1981. Section 6653(a) imposes an addition to tax if any part of the underpayment is due to negligence or intentional disregard of rules or regulations. Section 6653(a)(1) imposes a similar addition to tax for taxes for which the last date prescribed for payment is after December 31, 1981. Section 6653(a)(2) imposes an additional addition to tax on that portion of the underpayment attributable to negligence or intentional disregard of rules or regulations. Petitioner bears the burden of proof on this issue. Bixby v. Commissioner, 58 T.C. 757 791-792 (1972). Petitioner has failed to present any evidence on this issue other than her denial that she received most of the income in question. Accordingly, we hold for respondent on this issue. Decision will be entered under Rule 155. Footnotes
1. Unless otherwise indicated, all section references are to the Internal Revenue Code, as amended and in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.↩
2. In his notice of deficiency, respondent determined that petitioners had unreported income for the taxable years 1980 and 1981 in the amounts of $ 44,197.80 and $ 5,743.92, respectively. Respondent concedes $ 4,059.31 and $ 350.60 of these income adjustments for 1980 and 1981, respectively.↩
3. With respect to two of the 1980 checks, the month and date is unclear.↩
4. We note that copies of only some of these checks are part of the record. The copies of the checks which are part of the record, contain petitioner's endorsement and what purports to be the endorsement of Dr. Epling or one of his corporations, but do not contain the restrictive "For Deposit Only" endorsement. The parties stipulate that Dr. Epling did not make any of these endorsements. As to the checks which are not part of the record, it is clear that these checks were made payable to Dr. Epling or one of his corporations, that these checks contain an endorsement purporting to be that of Dr. Epling or one of his corporations, and that petitioner endorsed these checks in her own name.↩
5. As previously noted, respondent has conceded part of these amounts. See note 2, supra↩.
6. Petitioner also argues that Karme v. Commissioner, 673 F.2d 1062 (9th Cir. 1982), supports her position. Karme, however, involved disallowed deductions rather than unreported income. The Court of Appeals for the Ninth Circuit has held that when the notice of deficiency determines that a taxpayer had unreported illegal income, respondent must come forward with some evidentiary foundation linking the taxpayer to the alleged income-producing activity. Adamson v. Commissioner, 745 F.2d 541, 546-547 (9th Cir. 1984), affg. a Memorandum Opinion of this Court; Weimerskirch v. Commissioner, 596 F.2d 358, 362 (9th Cir. 1979), revg. 67 T.C. 672↩ (1977). In the instant case, respondent has produced such evidence.
7. On brief, petitioner argues that, because she was not criminally charged with the theft of all of the checks forming the basis for respondent's determination, we should find that she did not steal any amount other than that forming the basis for her nolo contendere plea. This argument is of no merit. Evidence of a plea of nolo contendere is of no evidentiary value under these circumstances. Fed. R. Evid. 410↩.