**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Virginia MORGAN, Defendant-Appellant.**

No. 83–1377.

United States Court of Appeals,
Seventh Circuit.

Argued Dec. 13, 1983.

Decided Jan. 10, 1984.

Carl M. Walsh, Chicago, Ill., for defendant-appellant.

William H. Thornton, Asst. U.S. Atty., Dan K. Webb, U.S. Atty., Chicago, Ill., for plaintiff-appellee.

Before CUMMINGS, Chief Judge, and ESCHBACH and COFFEY, Circuit Judges.

CUMMINGS, Chief Judge.

The sole issue presented for review in this Court is whether the district court erred in denying defendant Virginia Morgan's motion to suppress evidence seized pursuant to an allegedly unlawful stop and search at O'Hare airport in Chicago. The court held that based on the events as presented, a Drug Enforcement Agency ("DEA") agent and Chicago policemen working with him had enough reasonable suspicions to approach defendant and engage her in consensual conversation. During this conversation, which (as will be seen in Part III *infra*) was not a "seizure," the district court found that the defendant was asked to consent to a search of her baggage, after being informed she did not need to consent. Defendant consented each time to two baggage searches, and the second search produced cocaine. After a bench trial she was convicted of possession of cocaine with intent to distribute and was sentenced to five years' probation with the first three months to be served in a work release program. For the following reasons, we affirm the conviction.

## I

About 2:15 P.M. on September 23, 1983, a DEA agent and Chicago police officers dressed in plain-clothes were at O'Hare airport observing an incoming flight from Orlando, Florida. The first person to leave the plane was a white male, Gary Steuwe, who ran from the gate to the main terminal. He stopped at some wall phones, looked back in the direction from which he had come and then observed a flight monitor or surveillance of Steuwe's fellow passengers being conducted by DEA agent Labik and three Chicago policemen.[1]

The defendant deplaned approximately ten to fifteen passengers later. She met Steuwe and they walked to the terminal together and were followed by agents. Steuwe looked over his shoulder several times. The couple then separated and went into their respective washrooms. Steuwe emerged first, made eye contact with one of the pursuing agents and left the terminal. Two of the agents stopped him, identified themselves and asked to talk. Steuwe agreed but appeared nervous. He said he was travelling alone and had no luggage. He eventually agreed to a search of the handbag he was carrying which produced $1,000 in currency but no contraband and then left for a parking lot. The agents returned to the terminal to find that the defendant, standing in an enclosure between two exit doors, had already claimed two bags, one of which she would later identify as Steuwe's.

Two of the agents approached the defendant, identified themselves and asked to speak to her. She agreed. The defendant testified at the suppression hearing that the DEA agent told her she fit the description of a narcotics courier. He asked defendant if she would mind moving to a spot away from the flow of pedestrian traffic and into an area between the terminal entrance and exit doors. She agreed and moved her bags. When asked for identification, the agents testified that she produced her own driver's license and an airplane ticket with the names Mr. and Mrs. Steuwe. Morgan testified that the ticket was in her own name and she was travelling with Steuwe

---

1. Since the police officers were also narcotics investigators, they will ordinarily be included herein in the term "agents."

on business and was waiting for him to pick her up in his car. The agents thought that Morgan appeared nervous and frightened throughout the questioning.

The DEA agent testified that he informed Morgan that he was conducting a narcotics investigation and asked if she would agree to let him search the two bags she had claimed. He testified that he told her she had the right to refuse. Morgan testified that the agent told her he "had to" look into her bags and did not tell her she could refuse or even ask for her consent. At that time, a search of her bags produced nothing although the DEA agent noticed a sanitary napkin box in one of her bags.

The DEA agent left to make a phone call. The defendant testified that she asked to make a phone call but was told by the remaining agent that she had to remain where she was. The agent denies that this conversation took place. The defendant continued to look outside for Steuwe to arrive. The remaining agent suggested she go look for the car. The defendant went outside to look, leaving her luggage with the agent. Outside the terminal another agent asked if he could help her. Morgan testified that he accompanied her from the terminal out to the street but that testimony was controverted. After looking in vain for Steuwe's car, Morgan returned to the foyer where the DEA agent had returned. The DEA agent asked if she would consent to another search, indicating again that she could refuse. He testified that Morgan consented. Morgan testified that she neither was asked to nor did she consent to a search. During the second search of the luggage, the agent looked inside the box of sanitary napkins where he found cocaine in the center of the box. Defendant was then placed under arrest. A search of her person produced a small vial which contained traces of cocaine.

## II

■ The district court found that the defendant voluntarily consented to both searches. The court credited the testimony of the agents over that of the defendant.

The court found that the defendant was asked for permission to search her baggage for both searches; that she was told of her right to refuse on both occasions; and that she agreed to both of the searches. The court, after observing the demeanor of the witnesses, came to the conclusion that there was nothing presented that convinced him that the defendant was more credible than the agents. The court believed the agents' version of the conversations and concluded that both searches of defendant's luggage were made after defendant gave her informed, free and voluntary consent. The determination on the part of Judge Aspen as to what conversations actually took place is essentially a factual one and we cannot say that his determination is clearly erroneous. The determination of whether the consent was free and voluntary must be made with reference to the totality of the circumstances. *United States v. Mendenhall,* 446 U.S. 544, 100 S.Ct. 1870, 64 L.Ed.2d 497; *Schneckloth v. Bustamonte,* 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854. There was ample evidence presented to support the court's determination that Morgan's consent was voluntary. Although the fact that Morgan was told she had the right to refuse is not dispositive of the determination of voluntariness, it is highly relevant. *United States v. Mendenhall,* 446 U.S. at 558–59, 100 S.Ct. at 1879–80. Under the totality of the circumstances, the district court properly found that Morgan freely and voluntarily consented to both searches.

## III

■ Our inquiry does not end with a determination that Morgan's consent was voluntary, for if the agents had improperly "seized" the defendant, her consent to a search would have been tainted and the evidence should have been suppressed. *Florida v. Royer,* —— U.S. ——, 103 S.Ct. 1319, 75 L.Ed.2d 229. The district court found that no "seizure" had occurred because at all times the defendant was free to leave. We agree with the district court that no seizure had occurred. This Circuit has adopted Justice Stewart's "reasonable

person" test as articulated in *United States v. Mendenhall,* 446 U.S. 544, 554, 100 S.Ct. 1870, 1877, 64 L.Ed.2d 497 (Rehnquist, J., concurring):

> a person has been "seized" within the meaning of the Fourth Amendment only if, in view of all the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave.

*United States v. Black,* 675 F.2d 129, 133 (7th Cir.1982), certiorari denied, —— U.S. ——, 103 S.Ct. 1520, 75 L.Ed.2d 945. This Court concluded that "as long as a person remains at liberty to disregard a police officer's request for information, no constitutional interest is implicated." *Id.* at 134. To determine whether a seizure has occurred courts have considered several factors including the conduct of the police; the person of the individual citizen; and the physical surroundings of the encounter.

■ The facts surrounding the citizen-agents' encounter in the instant case are less restrictive than those presented in the *Mendenhall* case. In *Mendenhall,* the DEA agents observed the defendant, approached her in the airport corridor and asked to see identification. The identification did not match the name on her ticket. At that point, the agents asked the defendant to go to a separate room where she consented to a search. As noted, Justice Stewart, joined by Justice Rehnquist, did not consider this a "seizure." In the instant case, the agents approached the defendant in a public place where she was standing with her luggage waiting for a ride. She moved with the agents to another location ten feet away that was also a busy public area. The agents did not have uniforms, displayed no weapons, did not raise their voices nor intimidate the defendant. *United States v. Black,* 675 F.2d at 135. Thus the encounter between Morgan and the agents possessed none of the indicia of a "seizure."

■ The citizen-agents' encounter in the instant case is similar to the one presented in *United States v. Cordell,* 723 F.2d 1283 (7th Cir.1983) in which this Court held that the encounter between the police officers and Cordell was consensual at its inception. The Supreme Court has also recognized that not all interactions between police officers and citizens implicate Fourth Amendment concerns. *Florida v. Royer,* 103 S.Ct. at 1324. When an officer approaches an individual in a public place and asks if that individual will answer questions, even if the officer identifies himself as a police officer, a seizure has not necessarily occurred, at least without something more. *Id.* at 1324. This Court has also rejected the view that all encounters between police officers and citizens are seizures requiring justification. *United States v. Cordell, supra.*

In *Cordell,* the officers observed the defendant disembark from a Miami flight carrying a travel bag. The defendant proceeded at rapid pace through the terminal and walked into a public area between the terminal and the parking garage. At this point, the officers approached him and asked if he would speak to them. The defendant agreed and produced a driver's license in his own name and a ticket purchased for cash in another name. He was nervous throughout the conversation. One officer handed the ticket and license to the other officer, informed the defendant they were conducting a narcotics investigation, and eventually asked if they could look into his travel bag. Cordell consented and the search produced narcotics. This Court found the initial encounter to be merely a consensual conversation; however, once the officers took the license and ticket, the encounter became a detention. The detention was found to be appropriate because at that point, the officers had a reasonable, articulable suspicion based on all they had observed prior to this time to conduct an investigatory stop. *Id.* at 1285, citing *United States v. Brignoni-Ponce,* 422 U.S. 873, 95 S.Ct. 2574, 45 L.Ed.2d 607.

The instant case presented a similar initial encounter. Morgan and Steuwe deplaned separately from an Orlando, Florida, flight. Steuwe deplaned first and proceeded rapidly down the corridor. After Morgan disembarked she met Steuwe at the end of the corridor. Steuwe looked over his

shoulder several times. Both entered their respective washrooms. The agents talked to Steuwe who told them he was travelling alone and with no luggage. Up until this point, there was no sufficient reasonable, articulable suspicion to stop Morgan for an investigatory stop. Thereafter the agents approached Morgan in a public place and engaged her in consensual conversation because she had agreed to talk to them. The Fourth Amendment was not implicated at this point. *Florida v. Royer, supra; United States v. Cordell, supra.*

During the course of the present consensual conversation some discrepancies appeared. Morgan was travelling on a ticket with Steuwe's name on it. In addition, she claimed she was travelling with Steuwe and that one of the two pieces of luggage belonged to him. Steuwe claimed to be travelling alone without luggage. During the conversation, Morgan appeared to be nervous and frightened. At this point, the officers had enough reasonable, articulable suspicions to detain her for investigation. *United States v. Cordell, supra.* Despite the fact that there was enough at this point for an investigatory stop, the district court found that the encounter had not yet become a detention because the defendant was free to leave at all times. This Court found in *Cordell* that the retention of the defendant's ticket and license by the officers turned the consensual encounter into a

detention, albeit a justified one. The agents in the instant case did not keep the defendant's tickets during the initial encounter.[2] We need not determine whether the encounter had ripened into an actual detention, for in any event the agents' actions were appropriate.

■ The defendant argues that once they searched her and found nothing, the subsequent questioning turned into an improper detention. The district court disagreed. The defendant cites *Florida v. Royer, supra,* in support of this argument. In *Royer* the detectives inspected and retained the defendant's airline ticket that he needed for a flight and then took him to a small police room. The police retrieved Royer's luggage and only thereafter did Royer consent to a search of the luggage. The Supreme Court found that Royer had been illegally "seized." In contrast, in the instant case, Morgan remained in a public area and even left one of the agents to search for Steuwe's car. She argues that she could not have taken her luggage with her at that point; however, the district court disagreed because the agents did not take her luggage from her at any time. Cf. *United States v. Place,* —— U.S. ——, 103 S.Ct. 2637, 77 L.Ed.2d 110.[3] In addition, Morgan, like the defendant in *Cordell* and unlike the defendant in *Royer,* consented to both searches in a public place "on the spot." *Royer,* 103

---

**2.** There was a dispute in the testimony as to whether the officers retained Morgan's ticket and license when they initially looked at them. The district court found that the tickets were taken after the officers found the narcotics.

**3.** Defendant's counsel at oral argument relied on *Place* to support the proposition that Morgan was illegally detained but *Place* is factually distinguishable from the instant case. In *Place,* the officers did not receive the defendant's consent to search his luggage, so that they took the luggage and allowed Place to leave. The officers subjected the bags to a "sniff test" by trained dogs. The dogs reacted positively to one bag. The police kept the bag over the weekend and obtained a warrant on Monday. The Supreme Court found that the pre-warrant activity exceeded the permissible limits of an investigatory detention. In the instant case,

the agents never moved or took Morgan's luggage anywhere, and Morgan consented to both of the searches. Defendant's reliance on *Place* is therefore inappropriate.

Defendant also relies on *United States v. Moya,* 704 F.2d 337 (7th Cir.), vacated and remanded, —— U.S. ——, 104 S.Ct. 418, 78 L.Ed.2d 355 (1983) (remanded for further consideration in light of *United States v. Place*) to support her contention that she was unlawfully seized. Although this Court has not yet reconsidered and reissued the *Moya* case, it is factually similar to *Place* and distinguishable from the instant case. In *Moya,* after engaging the defendant in conversation and asking his permission to search his bag, the agents retained defendant's luggage when he refused to have it searched. Morgan's luggage was never taken from her. *Moya* provides no useful precedent for defendant Morgan.

S.Ct. at 1328; *Cordell,* at 1285.[4] Therefore the citizen-agents' encounter here was at all times proper and had never turned into an illegal detention in contrast to *Royer.*

## IV

The district court appropriately denied the defendant's motion to suppress. At no time during the encounter was she unlawfully detained. She freely consented to both searches of her luggage, and all the evidence produced therefrom was properly introduced at trial. Accordingly, the defendant's conviction is affirmed.

---

**4.** In his concurring opinion in *Cordell,* Judge Swygert stated that he reluctantly agreed with the result because of *Royer* and *Mendenhall.*