**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Alcides DURADES,
Defendant–Appellant.**

No. 89–1844.

United States Court of Appeals,
Seventh Circuit.

Argued Dec. 18, 1990.

Decided April 1, 1991.

**1162**

Thomas M. Durkin, Ava M. Gould, Scott D. Levine, Asst. U.S. Attys., Office of the U.S. Atty., Chicago, Ill., for plaintiff-appellee.

Stephen Levy, Chicago, Ill., for defendant-appellant.

Before BAUER, Chief Judge, CUMMINGS and FLAUM, Circuit Judges.

BAUER, Chief Judge.

Alcides Durades was charged in a one count indictment with possession of cocaine with intent to distribute in violation of 21 U.S.C. § 841(a)(1). The district court denied the defendant's pretrial motion to suppress evidence seized during a warrantless search of his apartment, finding that the defendant's consent to the search was voluntarily given. The evidence seized during that search and introduced at trial included cocaine as well as several incriminating statements made by the defendant to FBI agents. After hearing four days of evidence the jury found the defendant guilty as charged. The district court denied the defendant's post-trial motions for acquittal and a new trial based, to the extent relevant here, on the court's denial of the motion to suppress and the court's failure to instruct the jury properly. The court sentenced the defendant to ninety-seven months imprisonment under the sentencing guidelines. On appeal the defendant argues that the court erred in denying his motion to suppress and that the court committed reversible error in failing to adequately instruct the jury. We affirm.

## I.

Warrantless searches and seizures are reasonable within the meaning of the Fourth Amendment when conducted under the authority of voluntary consent. When relying on voluntary consent to justify such a search the prosecution has the burden of establishing that the consent was freely and voluntarily given. *Schneckloth v. Bustamonte*, 412 U.S. 218, 222, 93 S.Ct. 2041, 2045, 36 L.Ed.2d 854 (1973); *Bumper v. North Carolina*, 391 U.S. 543, 548, 88 S.Ct. 1788, 1791, 20 L.Ed.2d 797 (1968). This court will reverse the district court only if persuaded that the finding was clearly erroneous. *United States v. Sanchez–Jaramillo*, 637 F.2d 1094, 1098 (7th Cir.), *cert. denied*, 449 U.S. 862, 101 S.Ct. 166, 66 L.Ed.2d 79 (1980). Whether consent to a warrantless search is voluntarily given is a question of fact to be determined by looking to the totality of the circumstances. *Schneckloth*, 412 U.S. at 222, 93 S.Ct. at 2045. Accordingly, a recitation of the circumstances surrounding the search in question is necessary to our review of the district judge's disposition of the motion to suppress.

The evidence introduced at the suppression hearing revealed that as part of a narcotics investigation FBI special agents Sanz, Roberts and Jackson were conducting surveillance of an apartment building located at 1344–46 West Bryn Mawr in Chicago, Illinois. On July 22, 1988, as part of that investigation the three agents, accompanied by an individual named Osorio who had earlier been placed under arrest, sought admittance to the apartment where the defendant and his son resided. When the defendant's twenty-year-old son Islan answered the door agent Sanz testified that, in Spanish, he identified himself and the other agents, informed Islan they were involved in a narcotics investigation and asked if they could come into the apartment to ask questions. Islan indicated that the agents could enter, and the defendant testified that he consented as well. The three agents and Osorio entered a small foyer where they stood for several moments before moving into the living room. The defendant, his son, and a third individual identified as Fernando Valera, were present in the apartment. Upon entry agent Sanz asked if anyone else was present in the apartment or if anyone had guns. Although all three individuals indicated that no guns or other persons were present Sanz testified that he requested authority to perform a protective sweep.

The record contains conflicting accounts as to whether the defendant or his son consented to this sweep. According to Sanz, when asked if the defendant would mind if the agents looked around the defendant told him to go right ahead, and that they were welcome to conduct the sweep. Agent Roberts, who does not speak or understand Spanish, initially testified that after hearing a brief conversation in Spanish between Sanz, the defendant and the defendant's son, he and agent Jackson did a protective sweep of the apartment. He did not state whether the sweep was in response to a statement by Sanz that such a sweep was permitted. On cross-examination Roberts testified that the protective sweep occurred immediately upon their entry into the apartment and that he could not recall whether consent was obtained beforehand. The defendant testified that when asked by Sanz whether they could make a protective sweep he indicated he did not believe he could refuse such a search and that he trusted the agents to do whatever was right.

The sweep took place within the first few minutes the agents were present in the apartment and the testimony clearly reveals that its duration was less than a minute. When Roberts and Jackson returned they found Sanz conversing in Spanish with the defendant and his son. At that time Sanz asked everyone for identification and requested permission to conduct a search of the apartment. Sanz, the only agent who could understand and speak Spanish, testified that he told the defendant he wanted to do everything according to the law and he was going to write out a consent form which he would then explain to the defendant and his son. Sanz claimed that before permitting the defendant and his son to sign the form he explained the

form's contents to them both and advised them of their right to stop the search at any time.

The defendant, on the other hand, stated that when Sanz asked for permission to search the apartment he responded, "well, now that the authorities are already inside of my house, what can I do, how can I refuse," to which the agents did not respond. Durades further testified that Sanz did not inform him of his right to demand a search warrant, a statement which Sanz did not contradict in his testimony at the hearing. Finally, Durades' statements at the hearing reflected his belief that the protective sweep constituted the search itself and, therefore, the agents' subsequent request for written consent came after the search had occurred.

The consent to search form was handwritten in Spanish and, as translated, states as follows:

> I, Alcides Durades, and Islan Durades allow the agents of the Federal Bureau of Investigation to search my home/apartment located at 1340 West Bryn Mawr, Chicago, Illinois, (312) 271–5328.
>
> I understand that I have a right to deny such search, and I can do so at any time.[1]

After Alcides and Islan signed the form Sanz told Roberts and Jackson to conduct the search. The two agents were accompanied by Islan to insure that the agents acted properly. In the freezer Roberts found six square packages wrapped in aluminum foil, one of which, when opened, contained white powder. Roberts and Jackson immediately returned to the living room and informed Sanz of their discovery. At this time Alcides Durades confessed to Sanz that the cocaine was his and that Islan had nothing to do with it. Sanz placed the defendant under arrest and read him and the other occupants of the apartment their *Miranda* rights in both Spanish and English. Durades, however, continued to speak with Sanz and recited the circumstances leading up to his possession of the cocaine.

The defendant moved to suppress the evidence seized during the search on grounds that his consent to the search was not voluntary and, therefore, any evidence seized and subsequent confessions were the result of an illegal search. Based on the evidence submitted at the hearing the district court denied the defendant's motion to suppress. The court specifically found that Durades' testimony was not credible and that the testimony given by agents Sanz and Roberts was credible. Based on this credible evidence, the district judge evaluated the evidence in light of the totality of the circumstances and rejected the defendant's claim that his consent was not freely given. The court found that Sanz adequately informed the defendant of his right to refuse and stop the search, both verbally and in writing, before the search took place. The court also rejected the defendant's argument that the agents' failure to use a preprinted consent form or track its language exactly vitiated the consent otherwise freely given.

### A.

Before turning our attention to a review of the circumstances surrounding the search we must first determine what weight, if any, to give to statements given by Durades which conflict with those given by the agents at the suppression hearing, for the defendant's counsel places particular weight on Durades' version of events to sustain his challenge on appeal. It is clear that we will not reevaluate the witnesses' credibility or the weight given their testimony, for "[t]hat is the province of the trial court." *In re Lemmons & Co., Inc.*, 742 F.2d 1064, 1070 (7th Cir.1984). We will not reverse a credibility finding absent a conclusion that the trial court's findings are clearly erroneous. *United States v. Morgan*, 725 F.2d 56, 58 (7th Cir.1984). See also *In re Lemmons, supra* (to reverse credibility finding appellate court must be

---

1. The record is unclear as to the exact translation of the final sentence. At the suppression hearing agent Sanz indicated that the final sentence read as follows: "I understand that I have

the right to negate this search and can stop it at any moment." Counsel used this latter translation when questioning the defendant at that hearing.

left with "definite and firm conviction" district judge erred); *United States v. Verrusio*, 742 F.2d 1077, 1081 (7th Cir.1984) (trial judge's evaluation of conflicting evidence is "peculiarly within the scope of his responsibilities"); *United States v. $73,277, United States Currency*, 710 F.2d 283, 291 (7th Cir.1983) (particular deference given to trial judge's weighing of conflicting evidence).

■ The defendant does not quarrel with the district court's finding that the testimony of agents Sanz and Roberts was credible and that the testimony of Durades was unbelievable. Accordingly, to the extent the defendant's version of events conflicted with that given by the agents we are constrained to follow the accounts given by Sanz and Roberts. The defendant does, however, take issue with the district court's failure to address what he characterizes as inconsistencies between the two agents' testimony concerning the protective sweep. Durades also challenges the propriety of drawing from these conflicting statements the conclusion that the agents had in fact requested and received permission to conduct the sweep.

■ Although the defendant attacked this finding of the district court judge in his reply brief and at oral argument he did not challenge this aspect of the district court's order in his opening brief and, accordingly, such a challenge is deemed waived. *United States v. Barnes*, 907 F.2d 693, 697 (7th Cir.1990); *United States v. Pace*, 898 F.2d 1218, 1234 (7th Cir.1990). However even were we to decide the issue, we disagree that the testimony is inconsistent in any manner that would obligate the district court to resolve the discrepancies before ruling. As set forth above, agent Sanz unqualifiedly testified that he asked Durades and Durades' son for permission to conduct the precautionary sweep within the first few minutes the agents were present in the apartment and that Alcides told him in no uncertain terms that the agents were welcome to look around. At two different points during the hearing agent Roberts testified that an initial conversation was held between Sanz and Al-

cides in Spanish immediately upon their entry. On cross-examination Roberts stated that he himself did not participate in any conversation at that time. This statement does not undercut Sanz' testimony that he (Sanz) conversed with Durades. In fact Sanz was the only agent present capable of speaking Spanish and who could have held a conversation with the occupants. This fact additionally leads to the inescapable conclusion that Sanz is the only agent who could testify to what Durades said in response to the request to sweep the apartment. Because the defendant does not dispute the district court's decision to credit Sanz' testimony over that given by Durades we are obligated to follow the account given by Sanz. Further, to the extent that a discrepancy exists between Sanz' testimony that he directed Roberts and Jackson to conduct the sweep and Roberts' testimony that Sanz did not tell him anything, any such discrepancy is immaterial to the question of whether there was consent. Whether Sanz communicated Alcides' consent to Roberts and Jackson is irrelevant, for even if Roberts was under the mistaken impression that consent had not been obtained and Roberts believed he acted on his own accord, that belief does not vitiate the consent given by Durades.

In sum, we do not believe that these statements are inconsistent on the essential question of whether Alcides or Islan consented to the sweep. Compare *United States v. Verrusio*, 742 F.2d 1077, 1081 (7th Cir.1984) (where agents' versions of events irreconcilably inconsistent district court did not err in discounting their testimony). Regardless of Roberts' motives or belief as to the consensual nature of the sweep, the credible testimony clearly shows that Sanz asked for and received permission as the only agent who conversed with the defendant throughout their presence in the apartment. We cannot conclude, therefore, that the court clearly erred in making this finding.

**B.**

Our conclusion that the agents' version of events must be accepted is not the end

of our inquiry. Even though we accept as true the fact that the defendant consented to the sweep and subsequent search these are merely findings that, although highly relevant, see *United States v. Morgan*, 725 F.2d 56, 58 (7th Cir.1984), we factor into our examination of the totality of the circumstances. If, as the defendant argues on appeal, the consent is the product of coercion, however subtle, or the defendant was not fairly apprised of his constitutional rights, the consent may not be voluntary. *Schneckloth v. Bustamonte*, 412 U.S. at 228, 93 S.Ct. at 2048; *Davis v. North Carolina*, 384 U.S. 737, 740–41, 86 S.Ct. 1761, 1763–64, 16 L.Ed.2d 895 (1966).

■ The defendant points to the agents' conduct and overwhelming physical presence in the apartment to sustain his charge that they made it "abundantly clear" that the defendant had no choice but to sign the consent form and permit the search. According to the defendant, the presence of three agents plus a handcuffed arrestee in a small apartment combined with the fact that the agents wore guns and were able to gain entry to lobby of the defendant's secured building without difficulty, signaled to the defendant that the agents were able to move freely within the premises with or without the defendant's consent and in any manner they saw fit.[2] These actions, combined with the failure of Sanz to use a preprinted consent form or to inform the defendant either orally or in writing that he was entitled to demand a search warrant and that any evidence found could be used against him, should result, argues the

defendant, in a finding of involuntary consent.[3]

■ This court and others have previously determined that in the absence of any physical or overt coercion, circumstances like those recited above are by themselves usually insufficient to vitiate consent. See, e.g., *Schneckloth*, 412 U.S. at 232–33, 93 S.Ct. at 2050–51 (failure of police to advise defendant of right to refuse search is not, without more, determinative); *United States v. Talkington*, 843 F.2d 1041, 1048 (7th Cir.1988) (standing alone, the presence of several agents at time consent is requested is not per se coercive). Despite the fact that we have on several occasions determined that this type of conduct can invalidate consent when viewed in tandem with other evidence, several mitigating factors lead us to conclude that the consent in this case was voluntary. Although three agents entered the apartment, the evidence bears out the lower court's finding that they acted at all times in a professional manner. Sanz communicated his intention on at least one occasion to act lawfully and appropriately. The agents here never drew their weapons, nor was there any evidence that they coerced the defendant in any physical or verbal sense. See *United States v. Talkington, supra* (consent may be deemed involuntary where officers brandished firearms) and cases cited therein. The district court found that the agents did not question the defendant in an inappropriate or offensive way. Additionally, while the number of agents present here may be in another situation subtly coercive, the allegedly intimidating pres-

---

**2.** The defendant further argues that the nonconsensual protective sweep contributed to the defendant's belief that he could not refuse the search. As stated above, the credible evidence suggests that Durades consented to the sweep and, accordingly, we do not weigh this allegation in our analysis.

**3.** The defendant claims that Sanz also failed to inform him of his right to stop the search at anytime. The consent form informed the defendant that he could refuse to permit the search and could stop the search at anytime after it began. The defendant claims that the form inadequately communicated this right to the defendant. We disagree. If the defendant was unable to comprehend this right in its written

form the district court found, and we concur, that Sanz adequately explained this right to the defendant orally. Moreover, we have previously found that inaccuracies in usage of words to define "stop" are insufficient to invalidate the consent provided the form communicates the essence of the right. See, e.g., *United States v. Marin*, 761 F.2d 426, 434 (7th Cir.1985) (use of word "negate" in consent form adequately conveyed concept that the defendant may require authorization for the search). We likewise hold that the form used, although apparently not capable of being perfectly translated from Spanish to English, adequately communicated such a concept here.

ence of three agents was, we believe, diminished by virtue of the number of occupants present in the apartment at the time of the search.

To the extent defense counsel argues that the agents failed to adequately apprise the defendant of his rights, we must also reject that contention. Contrary to counsel's argument, the testimony at the suppression hearing was not "devoid of such information having been supplied by the agents in either a written or spoken form." The district court found, and we agree, that the credible evidence clearly supports the conclusion that Sanz informed both Alcides and Islan of their right to refuse and stop the search at any time. The fact that Sanz did not inform Durades of his right to obtain a search warrant does not, in and or itself, vitiate the consent. A consent form need not precisely inform a defendant of all his constitutional rights, and it is sufficient that the form used communicates the essence of those rights. *United States v. Marin*, 761 F.2d at 434. The credible testimony presented here, in conjunction with the other circumstances surrounding the search of the apartment, leads us to conclude that the defendant was adequately apprised of his right to stop the search at any time both in writing and orally. The defendant and his son were together at the time they reviewed the form and, as pointed out by the government at the suppression hearing, the defendant was not precluded from asking his son for help in understanding the form or Sanz' explanation.

The defendant insists that the agents should have tracked the conduct exhibited by agents in *United States v. Marin*, 761 F.2d 426 (7th Cir.1985). In *Marin*, the agents delayed the search for twenty-five minutes while they obtained a consent form printed in Spanish and the defendant's written consent was obtained before the agents entered the apartment. The court in *Marin* did not hold, however, that resort to the preprinted forms were required in every case but rather that a consent that adequately communicates the defendants' rights is adequate. *Id.* at 434.

The failure of the officers to use a preprinted form does not, therefore, invalidate otherwise voluntary consent.

The totality of the circumstances demonstrates that the defendant consented voluntarily to the search of his apartment and, accordingly, the district court did not err in denying defendant's motion to suppress the evidence seized. The agents' conduct in questioning the defendant and searching the apartment was not sufficiently inappropriate such that it ran afoul of constitutional standards. Moreover, the credible evidence supports the finding that agents sufficiently apprised the defendant, both orally and in writing, of his right to stop the search. The district court carefully weighed all the evidence in concluding that the consent was voluntary, and we cannot conclude that the finding is clearly erroneous. *United States v. Rojas*, 783 F.2d 105, 110 (7th Cir.), *cert. denied*, 479 U.S. 856, 107 S.Ct. 195, 93 L.Ed.2d 127 (1986).

## II.

The defendant next argues that the district court improperly instructed the jury. In reviewing such a claim the instructions are viewed as a whole, *United States v. Grier*, 866 F.2d 908, 932 (7th Cir.1989), and will not be disturbed on appeal provided they treat the issues "fairly and adequately". *United States v. Machi*, 811 F.2d 991, 1005 (7th Cir.1987). The district court has some latitude in its wording of the instruction and may reject proposed instructions if the essential points are covered by those instructions given. *United States v. Xheka*, 704 F.2d 974, 987 (7th Cir.), *cert. denied*, 464 U.S. 993, 104 S.Ct. 486, 78 L.Ed.2d 682 (1983). The court must, however, accurately define the essential elements of the offense charged. *United States v. Pope*, 561 F.2d 663, 670 (6th Cir.1977); *United States v. Clark*, 475 F.2d 240, 250 (2d Cir.1973).

The indictment charged the defendant with possession of cocaine with intent to distribute. The court gave the jury the following 7th Circuit Pattern Jury Instruction:

To sustain the charge of possession of cocaine with intent to distribute, the government must prove the following propositions:

First, the defendant knowingly or intentionally possessed cocaine;

Second, the defendant possessed cocaine with the intent to distribute it; and,

Third, the defendant knew the substance was a controlled substance.

The court further instructed the jury as follows: "Possession may be actual or constructive. Constructive possession is the ability to control cocaine." The court also defined the term "knowingly."

 Defendant first claims that the court should have given an instruction defining the word "distribution" because it is an essential element of the offense charged. Defendant tendered the following instructions, both of which were refused:

(1) "The term 'distribute' means to deliver ... a controlled substance to the possession of another person, which in turn means the actual, constructive, or attempted transfer of a controlled substance."

(2) "Distribution is the transfer of possession from one person to another."

The defendant's argument must be rejected for two reasons. As already pointed out, the district judge need not define elements not essential to the crime charged. Here, the essential elements are "possession" and "intent." *Id.* The defendant was not, for example, charged with actual distribution of the cocaine. Second, even if the term is essential we believe the trial court did not need to define it because terms such as distribute are "within the common understanding of a juror [and do] not require trial court elaboration." *United States v. Lignarolo,* 770 F.2d 971, 980 (11th Cir. 1985), *cert. denied,* 476 U.S. 1105, 106 S.Ct. 1948, 90 L.Ed.2d 358 (1986).

 The defendant also claims the court wrongly refused his instruction defining "possession." The tendered instruction read as follows: "Mere proximity to a controlled substance is not possession." The court rejected the instruction because the definition proposed by the defendant was already covered by the possession instruction, outlined above, which defined possession as either constructive or actual. The defendant contends that based on the evidence adduced at trial the proximity instruction was necessary. According to defendant, the court should have placed more emphasis on what "constructive possession" meant, specifically, that it does not include "mere proximity." As phrased by defense counsel, Durades' theory of the case was that he did not possess the cocaine, and if he did the possession was "merely constructive".

Although the defendant's argument is at first blush logical, the trial court had already defined possession in terms of the very phraseology defense counsel used to describe Durades' theory of the case—constructive possession. We do not believe that the district court was required to provide the jury with a separate instruction defining the term in an alternative fashion. The instruction given adequately conveyed the idea that a finding of constructive possession is sufficient to convict and a failure to specifically use the term "proximity" is not fatal in this instance. We believe the instructions given provided the jury with sufficient guidance on the meaning of possession.

 Based on a review of the instructions in their entirety, the district court did not err by refusing to give a distribution instruction or by refusing to give the defendant's tendered proximity instruction. The jury was apprised of the requisite elements of the offense in a pattern jury instruction and the essential elements of the crime defined, as the instructions sought to be defined were either already covered by an instruction or were not of such a complex nature that the court needed to define them.

### III.

For the reasons set forth above, we believe the district court properly denied the defendant's motion to suppress and correct-

ly instructed the jury. Accordingly, the district court is

AFFIRMED.