**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Ralph NAFZGER, Defendant–Appellant.**

**No. 91–3230.**

United States Court of Appeals, Seventh Circuit.

Argued April 21, 1992.

Decided May 26, 1992.

Grant C. Johnson, Asst. U.S. Atty., Madison, Wis. (argued), for plaintiff-appellee.

Joseph F. Owens, Arthur & Owens, New Berlin, Wis. (argued), for defendant-appellant.

Before CUMMINGS and POSNER, Circuit Judges, and WOOD, Jr., Senior Circuit Judge.

PER CURIAM.

Ralph Nafzger entered a conditional plea of guilty to the charge of possessing a stolen vehicle that had been transported across state lines. 18 U.S.C. § 2313 (1988). The condition of the plea was that he could contest on appeal the denial of his two motions to suppress evidence, which he now does.

Nafzger's plea arose out of an investigation by federal and state law enforcement officers into a multistate car-theft ring. As a part of that investigation the officers went to Nafzger's dairy farm in Juda, Wisconsin to execute a search warrant for a specific stolen truck. The search warrant failed to state any "place" to be searched other than the Western District of Wisconsin. Nafzger's farm included a residence and several outlying buildings used for his dairy business. When the officers got to the farm they knocked on the door of the residence. A woman answered and told them that Nafzger was out working on the farm somewhere. The officers found him outside his dairy barn, at which point Nafzger asked them what they wanted. The officers told him that they were looking for a black Ford F250 4X4 pickup truck. They showed him the search warrant for the truck that detailed what they were looking for. Nafzger read the search warrant and told the officers that he had a truck which fit that description. He then led them to the tool shed where he said that he kept the truck. The truck inside the shed matched the description of the truck detailed in the warrant. Once inside the shed, but before they searched the truck, one of the officers read to Nafzger a standard FBI consent-to-search document.

The officer explained to him that he had to sign the form before anyone could search the truck in his shed. Nafzger read the form and signed it, then the officers searched the truck.

The officers, after telling Nafzger that he was not under arrest, began asking Nafzger questions about the truck. Because they were questioning Nafzger in the shed, which was quite cold, they asked him if he wanted to answer their questions inside the house, or if he wanted to go inside to get a coat. He declined their offer and answered the questions. The interview lasted approximately an hour, during which time Nafzger eventually stated that he knew the truck was stolen.

Before he pleaded guilty Nafzger moved to suppress as admissible evidence the truck and the statements he gave to the officers during their investigation. The court denied both motions. As to the truck, the court found that Nafzger had consented to the search of his premises. As to Nafzger's statements, the court held that he was not in custody at the time of questioning, so he did not have a right to *Miranda* warnings. Nafzger contests these findings on appeal.

Nafzger claims that the truck should be suppressed as evidence because the officers seized it during an illegal search. The search was illegal, Nafzger claims, because the search warrant for the truck failed to specify with particularity the place to be searched. The search warrant described the truck in detail, but it described the place where it was to be found only as "the Western District of Wisconsin."

▄ The fourth amendment leaves no doubt that search warrants must "particularly describ[e] the place to be searched." Failure to do so renders the warrant a "general warrant," which the amendment's plain language clearly forbids. *See Payton v. New York,* 445 U.S. 573, 584 n. 21, 100 S.Ct. 1371, 1378 n. 21, 63 L.Ed.2d 639 (1980) (retracing the roots of the particularity requirement to the colonialists' objections to the writs of assistance). The particularity requirement is satisfied if "the description is such that the officers with a

search warrant can with reasonable effort ascertain and identify the place intended." *Steele v. United States,* 267 U.S. 498, 503, 45 S.Ct. 414, 416, 69 L.Ed. 757 (1925). This reading of the particularity requirement embodies two concerns. The first concern is the deterrence of "general, exploratory rummaging in a person's belongings." *Andresen v. Maryland,* 427 U.S. 463, 480, 96 S.Ct. 2737, 2748, 49 L.Ed.2d 627 (1976). The second concern is that the scope of a lawful search will be limited to "the places in which there is probable cause to believe that it may be found." *Maryland v. Garrison,* 480 U.S. 79, 84, 107 S.Ct. 1013, 1016, 94 L.Ed.2d 72 (1987). Officers can avoid these concerns by making "a sufficient showing to the magistrate that the described items are to be found in a particular place." 2 W. LaFave, Search and Seizure § 4.5, p. 207 (2d ed.1987). This showing may be evidenced by the search warrant itself, by the affidavit supporting the search warrant (if properly incorporated), *United States v. Maxwell,* 920 F.2d 1028, 1032 (D.C. Cir.1990), or, in limited cases, by the executing officer's knowledge that there was a particular place to be searched, known to both him and the magistrate judge at the time the warrant was issued. *United States v. Gahagan,* 865 F.2d 1490, 1497–98 (6th Cir.1989) (discussing cases).

▄ In this case, the truck was to be searched for "certain vehicle identification numbers and parts numbers" located on the vehicle. The warrant said that these numbers along with the vehicle constituted evidence of a violation of Title 18 U.S.C. §§ 511, 2312, & 2313. Neither the search warrant nor the supporting affidavit described the farm or even its general location. This is not a case in which the officer's knowledge goes to the probable cause determination. These omissions result in a total failure to show probable cause that the truck described could be found on Nafzger's farm, Juda, or anywhere in Dane County. Judging from the search warrant and the affidavit, the only place for which there was probable cause to search for the truck was "the Western District of Wisconsin." This language "limits" the search to

the whole of the district court's jurisdiction; in other words, it does not limit the search at all. Courts have rejected, on the grounds of overbreadth, search warrants that use more particular descriptions than the description here. *E.g., United States v. Alberts,* 721 F.2d 636, 639 (8th Cir.1983); *Maxwell,* 920 F.2d at 1031 (warrant found overly broad but upheld on sufficiency of affidavit). By accepting "the Western District of Wisconsin" as a particular description of the place the truck was to be found we would be giving the government carte blanche to search anywhere in that district that the truck might conceivably be found, condoning the use of the pernicious general warrant, and redacting the particularity requirement from the fourth amendment. The warrant used in this search was defective.

The government claims that the validity of the search warrant is irrelevant to this case because the officers first searched Nafzger's shed after he consented to the search. Even though the officers confronted Nafzger with the search warrant for the truck, the government argues, Nafzger of his own accord told the officers that he had a similar truck in his shed, took them to the shed so that they could look at the truck, and, once inside the shed, signed a consent-to-search form that the officers had read to him and that he had reviewed. The issue, therefore, on which the government urges us to focus is whether Nafzger validly consented to the search of his premises.

If Nafzger voluntarily consented to the search of the shed the search was valid. *Schneckloth v. Bustamonte,* 412 U.S. 218, 248, 93 S.Ct. 2041, 2058–59, 36 L.Ed.2d 854 (1973). If, on the other hand, "the consent is the product of coercion, however subtle, ... the consent may not be voluntary." *United States v. Durades,* 929 F.2d 1160, 1166 (7th Cir.1991). The government bears the burden of proving that the consent was voluntary, and whether consent ultimately was given is a question of fact that we determine by looking to the totality of the circumstances. *Schneckloth,* 412 U.S. at 227, 93 S.Ct. at 2047–48. We reverse the district court only if the court's ruling was clearly erroneous. *Durades,* 929 F.2d at 1163.

Relying on *Bumper v. North Carolina,* 391 U.S. 543, 88 S.Ct. 1788, 20 L.Ed.2d 797 (1968), Nafzger argues that the officers coerced him into consenting involuntarily by showing him the search defective warrant for the stolen truck, which falsely inferred authority that they had a search warrant for his premises. Although we need not decide whether *Bumper* makes consent to a search impossible once officers show someone a search warrant, *compare United States v. Zygarowski,* 724 F.Supp. 1052, 1056–57 (D.Mass.1989), *with Alberts,* 721 F.2d at 640, that case no doubt requires the prosecutor to bear the burden of showing that the voluntariness of the consent arises from more than mere "acquiescence to a claim of lawful authority." *Bumper,* 391 U.S. at 549, 88 S.Ct. at 1792. Accordingly, "[i]f the party conducting the search claimed the authority to search without consent, that factor weighs against a finding of voluntary consent." *Bolden v. SEPTA,* 953 F.2d 807, 824 (3d Cir.1991) (en banc). We then weigh this factor along with the other factors that *Schneckloth,* 412 U.S. at 227, 229, 247, 93 S.Ct. at 2047–48, 2048–49, 2058, directs courts to weigh in totality-of-the-circumstances cases, such as the nature of the police questioning, the environment in which the questioning took place, the possibly vulnerable subjective state of the person consenting, and the consenting party's knowledge of the right to refuse consent. *Id.*

■ Although we defer to the district court's findings as to these factors, those findings in this case offer little guidance. The court agreed with the magistrate judge's finding that the warrant's effect on Nafzger was "a false issue" because the warrant was not a search warrant *for* Nafzger's premises, but rather a search warrant of the truck once it was lawfully found. This characterization, however, begs the question: the truck could not have been lawfully found if the warrant was used to satisfy Nafzger that the officers had a right to search his premises. The warrant's effect on Nafzger's ability to assess whether or not he could refuse the search is the threshold question under *Bumper.* Certainly Nafzger, a dairy farm-

er with no criminal record, could not be expected to distinguish between a search warrant of the truck and a search warrant for the truck. Nothing in the record, moreover, indicates that such a distinction was explained to Nafzger. As soon as Nafzger saw the search warrant he told the agents that he had a truck in his shed and offered to take them to it. This was acquiescence to the claim of authority invoked by flashing the search warrant, not voluntary consent.

The government argues that, despite Nafzger's acquiescence, his signature on the consent form proves that he voluntarily consented. Two facts cast doubt on this contention. To begin with, the agents never had Nafzger sign the consent form until they were already in the shed staring at the truck, at which point Nafzger likely would have signed anything. The second problem is that the consent form expressly stated that Nafzger could refuse to allow the search only if the officers had no search warrant. It is true that we accept as proof of voluntariness consent forms that are general but express the essence of the right to refuse a search. *Durades,* 929 F.2d at 1167. The form Nafzger signed, however, communicated that he could not refuse the search because the officers showed him a search warrant. When the officers showed him their search warrant for the truck the caveat in the consent form kicked in, leading Nafzger to believe that he could not refuse the search. Use of the truck as evidence of the crime must be suppressed.

■ The court also should have suppressed Nafzger's statements to the officers because it is clear that the evidence turned up by the illegal search—the truck—triggered Nafzger's subsequent admission that he knew the truck was stolen. *United States v. Nikrasch,* 367 F.2d 740, 744 (7th Cir.1966) (Cummings, J.). The admissions were a direct result of the illegal search.

REVERSED AND REMANDED.