**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Johnny L. RICKS, Defendant– Appellant.**

**No. 01–1103.**

United States Court of Appeals, Seventh Circuit.

Argued June 13, 2001.

Decided June 26, 2001.

Before BAUER, COFFEY and KANNE, Circuit Judges.

ORDER

On April 26, 2000, after a three-day jury trial, Johnny L. Ricks was found guilty of possessing a firearm after a felony conviction in violation of 18 U.S.C. § 922(g). He was sentenced to 252 months' imprisonment, three years of supervised release, a $500 fine, and a $100 special assessment. In this direct appeal, Ricks argues that it was plain error for the district court to refuse his tendered jury instruction. We affirm.

This case began with a routine traffic stop in Mt. Vernon, Illinois. On the afternoon of March 1, 1999, Ricks and Byron Oliver were passengers in a white Chevrolet Impala convertible driven by their friend George McNair. Mt. Vernon police officer Donald Hattendorf stopped the car because, as he testified at trial, he had arrested McNair in the past for traffic offenses and knew that his drivers license was suspended. Hattendorf asked McNair to step out of the car, handcuffed him, and brought him to the rear of the Impala. Hattendorf testified at trial that, once McNair was out of the car, he did not leave police custody. Shortly after McNair was taken into custody, additional police officers arrived at the scene.

The police initially did not expect to arrest Ricks or Oliver. Ricks, the front-seat passenger, asked Officer Terry Hughes if he could get out of the car. Hughes testified at trial that as Ricks got out a gun fell from his waistband onto the ground. Hughes testified that he immediately yelled "gun" and pulled his weapon. Hattendorf testified that he heard the cry of "gun" shortly after Ricks exited the car. Officer Kendall Long, who was driving nearby at the time of the traffic stop, testified that he heard the cry of "gun" over the police scanner, and that he arrived at the scene a few minutes later to find Ricks lying face down on the ground with the gun a few feet away. Officers Hughes and Long both testified at trial that they heard Ricks say at the scene, "It's mine. They have nothing to do with it." Ricks's fingerprints were subsequently found on the gun.

Ricks was arrested and charged with possession of a firearm by a felon, 18 U.S.C. §§ 922(g), based on a 1984 conviction in Missouri for first degree burglary and two 1991 convictions in Illinois for armed robbery. Officers Hattendorf, Hughes and Long all testified at Ricks's trial. A forensic scientist from the Illinois state police crime lab testified that Ricks's fingerprints were found on the gun, and a case agent from the Bureau of Alcohol, Tobacco & Firearms testified that the gun was fully functional and had traveled in

interstate commerce. Ricks stipulated to his prior felony convictions.

Ricks testified on his own behalf and maintained that the gun belonged to McNair. Contradicting Hattendorf's testimony that McNair never left police custody during the incident, Ricks testified that after being handcuffed, McNair walked back to the car and told Ricks to take an object from between McNair's feet. Ricks stated that he picked up the object only to realize it was a gun and immediately dropped it on the floor of the car. He added that as he exited the car the third passenger, Oliver, who was riding in the rear passenger seat, must have kicked the gun out from under the seat causing it to fall on the ground next to the car. Ricks denied making any admissions at the scene regarding his possession of the gun. At the time of the trial, Oliver was living in another state and did not testify. The defense called McNair as a witness, but he invoked his Fifth Amendment right against self-incrimination, and Ricks did not call any other eyewitnesses to the traffic stop.

After the close of evidence, Ricks requested that the trial court give Seventh Circuit Pattern Jury Instruction 5.11, which provides: "A defendant's presence at the scene of the crime and knowledge that a crime is being committed is not alone sufficient to establish the defendant's guilt." In support of the tendered instruction, defense counsel argued as follows:

> I understand that the jury assumes it is a crime to be carrying the gun in the car be it not in the trunk or in a case or what have you. I don't want them to come back with a ruling, well, they are all in the car and since even if McNair was guilty of that, his presence makes him guilty. It's not just guilt by association.

The court rejected Ricks' tendered instruction, concluding that the facts did not support it, and defense counsel did not object after the court's refusal. After deliberating for roughly two hours, the jury returned a verdict of guilty. Ricks was sentenced on January 5, 2001, and he then filed this timely appeal on January 11, 2001, invoking jurisdiction under 28 U.S.C. § 1291.

On appeal Ricks advances one argument: that the district court's refusal to give his tendered jury instruction denied him a fair trial. A defendant is entitled to a defense theory instruction if: (1) the instruction accurately states the law; (2) the defense theory is supported by the evidence; (3) the defense theory is not already part of the charge; and (4) refusing the instruction would deny the defendant a fair trial. *United States v. Fawley*, 137 F.3d 458, 468 (7th Cir.1998). If the trial court rejects a tendered instruction that meets all four criteria, that decision provides grounds for reversal. *Id.* Jury instructions are reviewed in their entirety, and ones that accurately state the law and are supported by the record will not be disturbed on appeal. *United States v. Lloyd*, 71 F.3d 1256, 1266 (7th Cir.1995). Additionally, if it is clear beyond a reasonable doubt that a properly instructed jury would still have found the defendant guilty, then the error does not warrant reversal. *See Neder v. United States*, 527 U.S. 1, 15–16, 119 S.Ct. 1827, 144 L.Ed.2d 35 (1999); *United States v. Nance*, 236 F.3d 820, 826 (7th Cir.2000), *petition for cert. filed*, (U.S. Apr. 24, 2001) (No.00–9633). Here, Ricks's argument fails for two reasons: the defense theory was already covered by the jury instructions given; and rejection of Ricks's proposed instruction did not deny him a fair trial.

There is no dispute that the proposed instruction adequately stated the law. Additionally, the mere presence instruction is at least arguably supported by

the evidence in this case. The instruction is predicated on the defendant's presence at the scene of a crime in which the defendant claims he is not participating, and thus, as the Committee Comment to the Seventh Circuit Pattern Jury Instructions notes, it is most often given in conspiracy or aiding and abetting cases. Although no one other than Ricks was charged with a criminal offense in this case (other than the unrelated traffic offense with which McNair was charged), the instruction is arguably applicable. As Ricks's counsel argued to the trial court, the jury may have assumed it was a crime for McNair to be carrying a gun. Ricks's theory throughout the trial was that the gun belonged to McNair; had the jury accepted this premise, then, as Ricks properly asserts, the jury could not have properly found him guilty solely for riding in a car with McNair. Defendants like Ricks who face drug or weapons possession charges often request that the jury be instructed that "mere presence" in the vicinity of contraband does not constitute "possession." *See, e.g., United States v. Rice*, 995 F.2d 719, 725 (7th Cir.1993); *United States v.. Durades*, 929 F.2d 1160, 1168 (7th Cir. 1991). We have rejected, however, the contention that instructions in possession cases must include a qualifier on "mere proximity." *Rice*, 995 F.2d at 725; *Durades*, 929 F.2d at 1168.

We conclude that the mere presence instruction was not necessary. The instructions taken as a whole fairly and adequately instructed the jury that, in order to convict, it had to find that Ricks himself possessed the firearm. Notably, the charge itself suggests that a felon must be "in possession" of a firearm for there to be a crime at all. The court instructed the jury that it must find that the government proved beyond a reasonable doubt that Ricks possessed a firearm. The court instructed that the burden of proving Ricks guilty stayed with the government throughout the case, and that Ricks was not required to prove his innocence or offer any evidence at all. The court also instructed, consistent with the Seventh Circuit Pattern Jury Instruction for "felon-in-possession" cases, that: "[p]ossession of an object is the ability to control. Possession may exist even when a person is not in physical contact with the object, but knowingly has the power and intention to exercise direction and control over it either directly or through others." Taken as a whole, these instructions adequately covered the defense theory that Ricks could not be convicted solely for being present in the Impala.

■ Further, the absence of the instruction did not deny Ricks a fair trial. Errors in jury instructions are subject to harmless error analysis; an error is harmless if it appears "beyond a reasonable doubt that the error complained of did not contribute to the verdict." *Neder*, 527 U.S. at 16, 119 S.Ct. 1827 (citation and internal quotation marks omitted); *Nance*, 236 F.3d at 826. A reviewing court conducting harmless-error analysis does not become "in effect a second jury to determine whether the defendant is guilty." *Neder*, 527 U.S. at 19, 119 S.Ct. 1827 (citation and internal quotation marks omitted). Rather, the court must ask whether the record contains evidence that could rationally lead to a contrary finding with respect to the omitted element. *Id.*

If the jury was going to convict, it necessarily had to find that Ricks himself "possessed" the gun. There was direct evidence in the record upon which they could base that finding, including the statement of a police officer who said he saw the gun fall from Ricks's waistband and the fact that Ricks's fingerprints were found on the gun. The jury chose to believe the police officers' account over that of Ricks. We defer to a jury's credibility determination

because it has "the best opportunity to observe the verbal and nonverbal behavior of the witnesses ... in contrast with merely looking at the cold pages of an appellate record." *Lloyd,* 71 F.3d at 1268. Based on the evidence in the record, it seems highly unlikely that, even if the court gave the mere presence instruction, the jury would have reached a different verdict. Accordingly, we AFFIRM the decision of the district court.